IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| P.W.,<br><br>     *Plaintiff,*<br><br>  v.<br><br>CHESTER COMMUNITY CHARTER SCHOOL,<br><br>     *Defendant.* | CIVIL ACTION<br>NO. 22-840 |

**PAPPERT, J.**                              **September 20, 2022**

## MEMORANDUM

When Plaintiff P.W. was in middle school, she was sexually assaulted by another student while riding the school bus. P.W. asserts that by allowing a known sexual predator onto the bus with her, Defendant Chester Community Charter School ("CCCS") exposed P.W. to an increased risk of harm in violation of her Fourteenth Amendment substantive due process rights.[1] CCCS moves to dismiss P.W.'s claims and the Court grants the motion. Under the facts alleged, CCCS did not affirmatively use its authority to create a danger to P.W. By extension, P.W.'s *Monell* claims fail because she has not alleged an underlying constitutional violation.

I

On February 10, 2015, P.W. was a CCCS student enrolled at Eastside Middle School. (Compl. ¶ 6, Ex. A, ECF 1.) She boarded her assigned school bus, Route 25.

---

[1] P.W. also claims that CCCS "deprived" P.W. "of her pursuit of life, liberty, and happiness, due process, and other constitutional rights in violation of the Fifth and Fourteenth Amendments." (Compl. ¶ 31, Ex. A, ECF 1.) But beyond this conclusory allegation, she neither states which Fifth Amendment rights were violated, nor alleges sufficient facts to establish a Fifth Amendment violation.

(*Id.* ¶ 8.) Derek Hodges, another CCCS student, was also on that bus. (*Id.* ¶ 10.) During the ride, Hodges attempted to place his hand up P.W.'s skirt, but P.W. managed to fight him off. (*Id.* ¶¶ 10–11.) The bus driver, who was wearing headphones, did not attempt to intervene. (*Id.* ¶ 15.)

Hodges had attempted to touch P.W. against her will several years earlier, when she was in second grade. (*Id.* ¶ 17.) He also sexually assaulted another student. (*Id.* ¶ 18.) CCCS was aware of these incidents before February 10, 2015. (*Id.* ¶ 19.) Hodges was nevertheless allowed to ride Bus Route 25. (*Id.* ¶ 19.)

P.W. sued CCCS in the Philadelphia County Court of Common Pleas on November 30, 2021. CCCS removed the case to federal court. (ECF 1). P.W. alleges violations of her civil rights under 42 U.S.C. § 1983, specifically, a violation of her Fourteenth Amendment rights under the state-created danger theory, and municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

II

A Rule 12(b)(6) motion tests the sufficiency of the factual allegations in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis. *Fowler v. UPMC Shadyside*, 578 F. 203, 210 (3d Cir. 2009). First, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. Then, it "must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court must "construe the

complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

III

A

Section 1983 does not create substantive rights; it provides a remedy for violations of the Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). "In order to state a claim" under § 1983, a "plaintiff must show that defendant[ ], acting under color of state law, deprived h[er] of a right secured by the Constitution or the laws of the United States." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997). P.W. alleges that CCCS violated her right to bodily integrity under the Due Process Clause of the Fourteenth Amendment. *See* (Compl. ¶ 25). CCCS agrees that such a right exists. *See Phillips*, 515 F.3d at 235.

Generally, the state has no affirmative duty under the Due Process Clause to protect its citizens from private violence. *Morrow v. Balaski*, 719 F.3d 160, 166 (3d Cir. 2013). Several courts, including the Third Circuit Court of Appeals, have recognized the "state-created danger" exception to this rule. *Kneipp*, 95 F.3d at 1201. To plead state-created danger, a plaintiff must show that:

1. the harm ultimately caused was foreseeable and fairly direct;
2. a state actor[2] acted with a degree of culpability that shocks the conscience;
3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

---

[2] Pennsylvania charter schools have the same immunity as political subdivisions and local agencies. *See Easley v. City of Phila.*, No. 14-2699, 2015 WL 1408910, at *5 (E.D. Pa. March 27, 2015); *Warner ex rel. Warner v. Lawrence*, 900 A.2d 980, 985 (Pa. Commw. Ct. 2006).

> 4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 244 (3d Cir. 2016).

B

The fourth element, "whether the state's conduct created or increased the risk of danger to the plaintiff," is "typically the most contested." *Id.* Only "misuse of state authority, rather than a failure to use it, . . . can violate the Due Process Clause." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 282 (3d Cir. 2006). Noting the "inherent difficulty in drawing a line between an affirmative act and a failure to act," the Third Circuit recently clarified the analytical approach to this element:

> Rather than approach this inquiry as a choice between an act and an omission, we find it useful to first evaluate the setting or the "status quo" of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo. This approach . . . helps to clarify whether the state actor's conduct "created a danger" or "rendered the citizen more vulnerable to danger than had the state not acted at all.

*L.R.*, 836 F.3d at 243.

The caselaw illustrates the *status quo* approach when the state is alleged to have created a danger by allowing a third party access to a child. The state affirmatively acts when it *removes* a barrier that would otherwise prevent access to the child; *not instituting* a barrier to access is merely passive failure to act. *Compare id.* (teacher affirmatively acted by failing to enforce school's identification policy before allowing adult to pick up kindergartener), *with Morrow*, 719 F.3d at 178–79 (no affirmative act where school failed to keep bully from boarding victim's bus), *and DeShaney v.*

4

*Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 201 (no due process violation where state failed to remove child from abusive father's custody).

*Morrow* is very similar to this case. There, sisters Emily and Brittany Morrow "were subjected to a series of threats and physical assaults by Shaquana Anderson, a fellow student" over the course of several months. *Morrow*, 719 F.3d at 164. The school suspended Anderson after she attacked Brittany in the cafeteria, and several months later, Anderson was adjudicated delinquent and ordered to have no contact with Brittany. *Id.* Although the school was aware of the order, Anderson was still able to board Brittany's bus and threaten her. The Third Circuit held that the plaintiffs did not allege an affirmative act by the school:

> The Morrows also rely on the fact that the Defendants permitted Anderson to board Emily and Brittany's bus despite knowing about the no-contact orders against Anderson, and knowing that the bus did not service Anderson's home route. However, the only reasonable interpretation of that allegation is that the Defendants *failed* to take any affirmative steps to ensure that Anderson did not board the Morrow children's bus. Here again, the Complaint attempts to morph passive inaction into affirmative acts. However, merely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct.

*Id.* at 178–79 (emphasis in original).

P.W. alleges that CCCS created a danger by "allowing [Hodges] on Bus Route 25." (Compl. ¶ 19.) But she does not allege any facts suggesting that Hodges would have been unable to board Bus Route 25 under the *status quo*. (*Id.* at ¶ 24.) As in *Morrow*, CCCS's failure to prevent Hodges from boarding P.W.'s bus in light of his previous behavior toward her is passive inaction, not an affirmative act. P.W. has not satisfied the fourth element of the state-created danger doctrine. Because this is fatal to her claim, the Court need not address the remaining elements.

IV

P.W.'s *Monell* claims fall with her state-created danger claim.  A municipal entity is not liable under § 1983 for an employee's acts on a theory of *respondeat superior*.  *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).  Instead, a plaintiff must demonstrate that the municipality's policy or custom caused a constitutional violation.  *See id.*  P.W. has not adequately alleged a constitutional violation under the state-created danger theory, nor does she allege that CCCS violated any other constitutional right.

V

The Court dismisses P.W.'s claims without prejudice.  P.W. may amend her complaint if she can allege facts, consistent with this memorandum, establishing a constitutional violation.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
